# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **JON E. SADLER,** <br><br> Plaintiff, <br> vs. <br><br> **UNITED OF OMAHA LIFE INSURANCE CO.** <br><br> Defendant. | Case No.: 2:17-cv-00979-DBP <br><br> **MEMORANDUM DECISION & ORDER** <br><br> Magistrate Judge Dustin B. Pead |

This matter comes before the court on Plaintiff Jon E. Sadler ("Mr. Sadler") and Defendant United of Omaha Life Insurance Co.'s ("United of Omaha") cross motions for summary judgment.[1] The parties in this case consented to United States Magistrate Judge Dustin B. Pead conducting all proceedings, including entry of final judgment.[2] The court, having carefully considered the parties' submissions, relevant legal authorities and oral argument of counsel, concludes as follows and grants United of Omaha's motion for summary judgment and denies Mr. Saddler's cross motion for summary judgment.

---

[1] ECF No. 22, ECF No. 21.

[2] ECF No. 13; *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73.

## RELEVANT UNDISPUTED FACTS[3]

1. As part of his employment as a senior production planner with Moxtek Inc., Mr. Sadler participated in an employee welfare benefit plan (the "Plan") that provided eligible employees with coverage under both short-term disability ("STD") and long-term disability ("LTD") insurance policies issued by United of Omaha.[4]

2. The LTD policy grants United of Omaha authority to interpret their language and states:

> By purchasing the Policy, the Policyholder grants Us the discretion
> And the final authority to construe and interpret the Policy.[5]

3. The LTD policy also grants United of Omaha the authority to make benefits decisions, stating:

> Benefits under the Policy will be paid only if We decide, in Our discretion, that a person is entitled to them.[6]

**Mr. Sadler's Disability Claim**

4. Mr. Sadler submitted a claim for STD benefits on October 22, 2015.[7] In his claim

---

[3] These facts have been determined to be undisputed following a review of the parties' briefing along with the sealed administrative record.

[4] Defendant's Motion for Summary Judgment ("Omaha's Motion") at 4, ECF No. 21, filed April 26, 2018; Administrative Record, ECF No. 24 at 120, 24, and 147, filed under seal April 30, 2018.

[5] Omaha's Motion at 5; Administrative Record at 24, 147.

[6] *Id.*; *Id.*

[7] *Id.* at 6; *Id.* at 101.

Plaintiff indicated that he suffered from mononucleosis, beginning in September 2015, and his last day worked was September 30, 2015.[8]

5. Mr. Sadler's claim also included an attending physician statement ("APS") from Dr. Karyn Springer ("Dr. Springer"). Dr. Springer explained that "fatigue & fevers limit [Mr. Sadler's] ability to work" and listed his functional restrictions as "relative rest, [and] supportive care."[9]

6. Dr. Springer further indicated that Mr. Sadler should be able to work full-time in 3–6 months.[10]

7. United of Omaha approved and paid Mr. Sadler's STD claim under the Policy for the maximum benefit duration of 11 weeks, through December 31, 2015.[11]

8. Thereafter, the claim was reviewed under the LTD Policy.[12]

9. Mr. Sadler completed a Supplementary Report of Disability claiming total disability. He reported suffering from a painful foot and indicated that his fatigue had increased.[13]

10. In an APS dated February 19, 2016, Dr. Springer provided diagnoses of infectious

---

[8] *Id.*; *Id.*
[9] *Id.* at 6; *Id.* at 106.

[10] *Id.* at 6; *Id.* at 106.

[11] *Id.* at 7; *Id.* at 76-77.

[12] *Id.* at 8; *Id.* at 1014-1018.

[13] *Id.* at 8; *Id.* at 578.

mononucleosis, diabetes, chest pain, and left shoulder bursitis. The APS also offered the following restrictions for Mr. Sadler: (1) sit up to five hours; (2) stand up to two hours; and (3) walk up to two hours, in each eight-hour work day.[14]

11. United of Omaha medical consultant, Nurse Denise Theisen ("Nurse Theisen"), summarized Mr. Sadler's medical records. Based on her review, Nurse Theisen provided opinions on Plaintiff's various medical conditions.[15]

12. On March 22, 2016, United of Omaha a letter informing Dr. Spring that it did not have medical findings or documentation of consistent treatment to support Mr. Sadler's claim for ongoing benefits. United of Omaha asked Dr. Springer to state whether she agreed with the assessment.[16]

13. In her April 1, 2016, response, Dr. Springer stated that she considered Mr. Sadler disabled. She explained that Plaintiff suffered from chronic fatigue, related to his medication side effects, and mononucleosis. Dr. Springer noted that tests for the EBV early antigen were positive, and in order to recover from his various surgeries, stroke, and chronic fatigue, Mr. Sadler was unable to work for any extended period of time.[17]

14. Nurse Theisen analyzed the additional information provided. While the medical documentation showed a history of various medical conditions, Nurse Theisen concluded

---

[14] *Id*. at 9; *Id.* at 579.

[15] *Id.* at 9; *Id.* at 1220-1229.

[16] *Id.* at 9; *Id.* at 519-522.

[17] *Id.* at 10; *Id.* at 495.

that Mr. Spring had no complications or obvious physical functional impairments related to the medical conditions and his treatment was conservative.[18]

15. As a result, United of Omaha determined there was no evidence of any significant physical, mental, or cognitive impairment that would preclude Mr. Sadler from his previous work demands. United of Omaha recognized that Mr. Sadler had been seen by multiple providers but found his treatment to be conservative and controlled with medications. Defendant failed to find anything in the record that prevented Mr. Sadler from returning to work in his regular occupation on a full-time basis, and his surgeon had cleared his return to work as of December 2015.[19]

16. Based on its review of the claim information, medical records, correspondence, and analysis provided by its medical reviewer, United of Omaha approved Mr. Sadler's LTD benefits under the Policy from January 1, 2016 to April 14, 2016. Defendant, however, denied benefits beyond the April 14, 2016 date.[20]

**Mr. Sadler's Appeal**

16. Mr. Sadler appealed United of Omaha's benefit termination on September 29, 2016.[21]

17. As part of its review on appeal, United of Omaha continued gathering medical records from Mr. Sadler's physicians, including an updated physical assessment and mental

---

[18] *Id.* at 10; *Id.* at 1216-1219.

[19] *Id.* at 10-11; *Id.* at 392.

[20] *Id*. at 12; *Id.* at 392.

[21] *Id*. at 12; *Id.* at 361-362.

capacity assessment from Dr. Springer.[22]

18. Moxtek also submitted a letter in support of the appeal stating Plaintiff suffered serious health conditions for the previous eight years.[23]

19. An Occupational Analysis was conducted and found that the material duties of Mr. Sadler's occupation primarily involved scheduling and coordinating the flow of work within or between departments such that the physical demand characteristics were generally at the sedentary level.[24]

20. United of Omaha also requested an independent medical review by Kent Crossley, M.D. ("Dr. Crossley").[25]

21. As part of his review, Dr. Crossley analyzed Plaintiff's medical records. Dr. Crossley opined that Mr. Sadler's medical problems were well managed and would not interfere with his ability to function in the workplace.[26] For the referenced period of time, Dr. Crossley did not find any evidence of an impairment that would prevent Mr. Sadler from performing his occupation.[27]

22. After analyzing all the medical records, occupational requirements, claim and appeals

---

[22] *Id*. at 12; *Id.* at 217-315.

[23] *Id.* at 15; *Id.* at 351-352.

[24] *Id.* at 15; *Id.* at 195-196.

[25] *Id*. at 16; *Id.* at 182-187.

[26] *Id*. at 16; *Id.* at 185-186.

[27] *Id.* at 17; *Id.* at 186.

information and multiple medical consultations, United of Omaha informed Mr. Sadler that the prior denial of his claim for benefits beyond April 14, 2016 was appropriate.[28]

23. In doing so, United of Omaha provided a list of documents and reports that were reviewed as part of his appeal. This included: 1) the LTD application; (2) attending physician statements; (3) physical assessment form dated 10/28/16; (4) mental capacity assessment dated 11/2/2016; (5) appeal letter; (6) medical records from IHC; (7) job description; (8) medical records from Dr. Wilkinson; (9) medical records from Dr. Baker; (10) prescription history; (11) medical records from Dr. Bunch; (12) a letter from Sadler's employer; (13) request for reasonable accommodation form; (14) a return to work form dated 2/24/15; (15) Lincoln Financial Group disability forms; (16) medical records from S. Clayson, NP, neurology dated 12/16/15; (17) medical records from M. Jensen, PA-C, pain medicine dated 12/2/14–7/6/16; (18) medical records from S. Schauss, PA-C, for sleep; (19) a vocational consultant review; (20) and an independent physician consultant review by Dr. Crossley, dated January 3, 2017.[29]

24. United of Omaha acknowledged that Mr. Sadler was assessed with several chronic conditions, but determined that the clinical findings did not support any conditions that would result in functional impairment or work limitations that precluded Mr. Sadler from performing the material duties of his regular occupation beyond April 14, 2016.[30]

25. Mr. Sadler commenced this lawsuit on August 30, 2017.[31]

---

[28] *Id*. at 17; *Id.* at 174-180.

[29] *Id.* at 16-17; *Id.* at 175-176.

[30] *Id.* at 18; *Id.* at 178-179.

[31] ECF No. 2.

26. The parties agree that the Plan is "interpreted under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").[32]

## CONCLUSIONS OF LAW

### I. THE STANDARD OF REVIEW IS ARBITRARY AND CAPRICIOUS.

Under ERISA, summary judgment can be "a vehicle for deciding the case [where] the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor."[33] Generally, the applicable standard of review is de novo, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan."[34] In circumstances where the plan grants discretionary authority to the administrator, then the arbitrary and capricious standard of review applies to the administrator's actions.[35]

Here, the United of Omaha Policy clearly states that benefits "will be paid only if We decide, in Our discretion, that a person is entitled to them."[36] This language vests the plan administrator with the discretionary authority to determine benefit eligibility and therefore the arbitrary and capricious standard of review applies.[37]

---

[32] Omaha's Motion at 4; Administrative Record at 1, 120.

[33] *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010).

[34] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989).

[35] *Charter Canyon Treatment Ctr. v. Pool Co.*, 153 F.3d 1132, 1135 (10th Cir. 1998) (*citing Firestone* 489 U.S. at 115).

[36] Omaha's Motion at 5; Administrative Record at 24, 147.

[37] *See, e.g.*, *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1167 (10th Cir. 2006).

Under an arbitrary and capricious review, the court is not tasked with "determining whether [the claimant] was, in the district court's view, entitled to . . . benefits."[38] Rather, the court must determine "whether the administrator's actions were arbitrary and capricious."[39] A plan administrator's interpretation is not arbitrary and capricious if it is reasonable and based on substantial evidence in the administrative record.[40]

## II. THE COURT TREATS UNITED OF OMAHA'S INHERENT CONFLICT OF INTEREST AS A FACTOR IN ITS REVIEW OF THE DENIAL.

### A. United of Omaha Has an Inherent Conflict as Both Evaluator and Payor of Claims.

United of Omaha admits that as both evaluator and payor of claims there is an inherent conflict of interest.[41] Under the arbitrary and capricious standard, an inherent conflict is relevant and should be considered to be "more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision . . . [and] should

---

[38] *Sandoval v. Aetna Life & Casualty Ins Co.*, 967 F.2d 377, 381 (10th Cir. 1992).

[39] *Id*.

[40] *Conkright v. Frommert*, 130 S. Ct. 1640, 1651, 559 U.S. 506, 176 L. Ed. 2d 469 (2010) (citations omitted); *Adamson v. UNUM Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006) ("A lack of substantial evidence often indicates an arbitrary and capricious decision."); *Nance v. Sun Life Assur. Co. of Can.,* 294 F.3d 1263,1269 (10th Cir. 2002) ("[T]his standard is a difficult one for a claimant to overcome."); *Flinders v. Workforce Stabilization Plan of Phillips Petrol. Co.*, 491 F.3d 1180, 1189 (10th Cir. 2007) (The plan administrator's decision may not be set aside if it is "reasonable and made in good faith").

[41] *Foster v. PPG Industries, Inc.*, 693 F.3d 1226, 1232 (10th Cir. 2012).

prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy . . . ."[42]

In this case, United of Omaha hired independent physician Dr. Kent Crossley to assess Mr. Sadler's disability claim on appeal. In hiring an independent physician to assess disability, United of Omaha attempted to reduce bias and promote an accurate assessment of the claim. As a result, the court affords United of Omaha's inherent conflict less, or limited, weight.[43]

### B. United of Omaha's Decision was Not Tainted by Conflict.

Mr. Sadler argues Defendant's decision was tainted by improper motive as seen when United of Omaha notified him that his claim could be covered under an earlier policy issued by Lincoln National.[44]

Upon review, the court finds no evidence or support for Plaintiff's claim of improper motive stemming from United of Omaha's suggestion that coverage may have existed under the Lincoln National policy. Further, after United of Omaha determined its Policy applied, it performed a comprehensive review, considered relevant information and sought to reduce the effect of its inherent conflict by seeking the independent expert advice of Dr. Crossley.[45]

---

[42] *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 116, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008).

[43] *Libel v. Aetna Life Ins. Co,.* 595 F. App'x. 755, 762 (10th Cir. 2014).

[44] Mr. Sadler's Reply to Motion for Summary Judgment (Mr. Sadler's Reply) at 4; ECF No. 27, filed on June 7, 2108; Administrative Record at 617.

[45] *See Fought v. Unum Life Ins. Co. of Am.*, 379 F.3d 997, 1015 (10th Cir. 2004) (abrogated on other grounds by *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116, 128 S. Ct. 2343, 171 L.Ed.2d 299 (2008).

## III. SUBSTANTIAL EVIDENCE IN THE ADMINISTRATIVE RECORD SUPPORTS UNITED OF OMAHA'S DECISION.

In order to receive LTD benefits under the policy, Mr. Sadler was required to demonstrate:

> that because of an Injury or Sickness, a significant change in [his] mental or physical functional capacity has occurred in which:
>
> a) . . . . [he is] prevented from performing at least one of the Material Duties of [his] Regular Occupation on a part-time or full-time basis; and
>
> b) [he is] unable to generate Current Earnings which exceed 99% of [his] Basic Monthly Earnings due to that same Injury or Sickness.[46]

The LTD defines Material Duties as "the essential tasks, functions, and operations relating to an occupation that cannot be reasonably omitted or modified."[47]

Based on the claim submitted and the accompanying medical information, United of Omaha approved and paid for LTD benefits beginning January 1, 2016 through April 14, 2016. Defendant determined, however, that the medical records and other evidence submitted did not support Plaintiff's continued claim of disability after the April date. Upon review and for the reasons set forth below, the court finds that United of Omaha's decision to deny LTD benefits beyond April 14, 2016, was reasonable and supported by substantial evidence in the administrative record including, information from Mr. Sadler's attending physician, medical records, diagnostic testing, and an independent medical review.

---

[46] Administrative Record at 151.

[47] Administrative Record at 152.

11

### A. United of Omaha Properly Determined That Mr. Sadler's Regular Occupation Was Sedentary.

As part of the LTD claim review, United of Omaha performed an Occupational Analysis to identify Mr. Sadler's occupation as performed in the national economy. Mr. Sadler challenges United of Omaha's determination that his Regular Occupation was sedentary.[48]

The LTD Policy defines "Regular Occupation" as:

[T]he occupation You are routinely performing when Your Disability begins. Your regular occupation is not limited to Your specific position held with the Policyholder but will instead be considered to be a similar position or activity based on job descriptions included in the most current edition of the U.S. Department of Labor Dictionary of Occupational Titles (DOT). We have the right to substitute or replace the DOT with another service or other information that We determine to be of comparable purpose, with or without notice. To determine Your regular occupation, We will look at Your occupation as it is normally performed in the national economy, instead of how work tasks are performed for a specific employer, at a specific location, or in a specific area or region.[49]

The Occupational Analysis reviewed Mr. Sadler's job as a Senior Production Planner at Moxtek who "[p]lans, organizes, directs and controls activities on the Optics Production Control Programs including master scheduling of production and material fulfillment for Optics Production group[,]"[50] In addition the Occupational Analysis considered Mr. Sadler's job as

---

[48] Mr. Sadler's Opposition Memorandum ("Sadler's Opposition") at 13-14, ECF No. 25, filed on May 24, 2018. Mr. Sadler also challenges the qualifications Mr. Douglas Palmer, the Mutual of Omaha employee who conducted the Analysis. Plaintiff, however, did not request any discovery related to Mr. Palmer's qualifications during the administrative review or conflict discovery period, and to simply raise the issue now without any support does not create evidence of a conflict. *See generally Murphy v. Deloite & Touche Group Ins. Plan*, 619 F.3d 1151, 1163, ftn. 7 (10th Cir. 2010) (discussing ability to conduct discovery related to the autonomy of an independent physician's review.).

[49] Administrative Record at 153.

[50] Administrative Record at 107.

performed in the national economy under the current edition of the U.S. Department of Labor Dictionary of Occupational Titles (DOT). Under the DOT, Mr. Sadler's job compared to that of a Production Coordinator with duties involving "scheduling and coordinating the flow of work within or between departments of a manufacturing plant to expedite production"[51] and "[t]he physical demand characteristics of this occupation generally fall[ing] within the sedentary exertion level . . . . "[52] Based thereon, United of Omaha concluded that Mr. Sadler's Regular Occupation required the functional capacity to perform at sedentary level.

The Court finds the comparison of occupations to be reasonable. Mr. Sadler does not provide any evidence to the contrary and the mere fact that Moxtek's job description may suggest a higher level of physical activity is not dispositive. Based on the plain language of the Policy defining Regular Occupation and the DOT, United of Omaha's analysis and conclusion that the physical characteristics of Mr. Sadler's Regular Occupation are sedentary is appropriate.

### B. United of Omaha Properly Considered Dr. Springer's Attending Physician Statements.

In his original claim, Mr. Sadler claimed disability due to fatigue and recurrent fevers stemming from mononucleosis and EBV infection. In support, Dr. Springer submitted an APS stating, "fatigue & fevers limit [Mr. Sadler's] ability to work" and "relative rest, [and] supportive care" is needed.[53] Mr. Sadler's original claim did not refer to any other medical conditions and did not identify any physical or mental restrictions or limitations. In February 2016, Dr. Springer

---

[51] Administrative Record at 195.

[52] Administrative Record at 195.

[53] Administrative Record at 106.

submitted a second APS and identified the following physical restrictions for Mr. Sadler in an eight-hour work day: (1) sit up to five hours; (2) stand up to two hours; and (3) walk up to two hours.[54] In April, Dr. Springer opined that Mr. Sadler was disabled but did not address the language of the Plan or any specific physical limitations that prevented him from performing his job.[55]

United of Omaha properly consider Dr. Springer's statements. In doing so, United of Omaha is not required, however, to accept conclusory statements of disability absent any supporting data.[56] Dr. Springer's claims of fatigue are only supported by Mr. Sadler's own reports, and his claim of continuous fevers was not reinforced by any testing performed during numerous doctor's visits. Additionally, United of Omaha determined that the restrictions listed by Dr. Springer did not prevent Mr. Sadler from performing the duties of his Regular Occupation.

### C. United of Omaha Properly Considered Mr. Sadler's Medical Records.

United of Omaha gathered Mr. Sadler's records for review by Nurse Denise Theisen ("Nurse Theisen"). She noted that although Mr. Sadler had undergone surgery for thoracic outlet syndrome in November 2015, his physician reported that he was recovered as of December 15, 2015. She also documented an absence of lab tests confirming Mr. Sadler's primary impairing

---

[54] Administrative Record at 579.

[55] Administrative Record at 495.

[56] *See Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1099 (10th Cir. 1999) (claims administrator does not act arbitrarily by finding no objective evidence of total disability despite the existence of a letter and two reports from a treating physician); *see also Rizzi v. Hartford Life & Acc. Ins. Co.*, 383 F. App'x. 738, 752–53 (10th Cir. 2010) (upholding disability denial where claim only supported by subjective complaint with no "tangible evidence" and the "[o]bjective medical testing revealed no cause for her condition or confirmation of her limitations.").

14

condition of mononucleosis, and reported that the other medical conditions, including diabetes, bursitis, and neuropathy, did not relate to Plaintiff's disability claim and there were no significant impairments identified.

After receiving additional information from Dr. Springer, Nurse Theisen confirmed that despite past and possible persistent EBV infection, no physical impairments were confirmed by the records provided. In addition, although Mr. Sadler's records referred to various conditions, including obesity, gout, diabetes, neuropathy, low back pain radiating down his left buttock and leg, obstructive sleep apnea and reports of trouble with focus and concentration, the conditions were appropriately managed and there was no indication of complications or functional impairments relating thereto.

The existence of medical conditions does not automatically translate to disability.[57] Indeed, based upon Nurse Theisen's review of the medical records and other documentation submitted, United of Omaha reasonably determined that the clinical findings did not support any conditions that would result in functional impairment or require work limitations that would preclude Mr. Sadler from performing the material duties of his Regular Occupation beyond April 14, 2016.

---

[57] *See Velarde v. Associated Reg'l & Univ. Pathologists*, 61 F. App'x 627, 631 (10th Cir. 2003); *see also Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability. A claimant bears the burden of proving that an impairment is disabling.").

### D. United of Omaha's Decision is Further Supported by an Independent Medical Review.

#### 1. Dr. Crossley's Review Supports United of Omaha's Decision.

On appeal, United of Omaha reviewed updated information relating to Mr. Sadler's claim and took the additional step of requesting an independent medical review by Dr. Crossley. As discussed, while claims administrators are not required do so, "independent medical examinations are often helpful" and "promote[ ] the purposes of ERISA by obtaining an independent evaluation."[58]

Based on his review, Dr. Crossley concluded that Plaintiff's medical problems were well managed. While Mr. Sadler's medical history was significant for cardiovascular disease, Dr. Crossley noted that as of late 2015 he was asymptomatic and his heart condition was well-controlled with no recent episodes of arrhythmias. Further, while Mr. Sadler had suffered a stroke in December 2014 and residual visual field loss on the left side, the records indicated that as of mid-2015 Plaintiff's visual field testing improved, and he was able to obtain a driver's license. Mr. Sadler's renal function was also normal with no evidence of retinopathy and the medical records did not discuss any specific complications or functional limitations. Additionally, Dr. Crossley was not convinced that Mr. Sadler had active EBV because the serologies did not necessarily suggest a current or ongoing infection.

For these reasons, Dr. Crossley's independent medical review reasonably determined that

---

[58] *Fought v. Unum Life Ins. Co. of Am.*, 379 F.3d 997, 1015 (10th Cir. 2004) (abrogated on other grounds by *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116, 128 S. Ct. 2343, 171 L.Ed.2d 299 (2008); *see Nelson v. Aetna Life Ins. Co.*, 568 F. App'x 615, 620–21 (10th Cir. 2014) (holding insurer may base its decision on independent specialists' opinions who reviewed the medical evidence and set forth the rationales for their conclusions.). *See Supra,* at 9-10.

16

the evidence did not support Mr. Sadler's claim of impairment beyond April 14, 2016.

        2.       <u>There is No Evidence That Dr. Crossley's Review was Conflicted</u>.

The Court finds no support for Mr. Sadler's claim that Dr. Crossley's review was improper or tainted by conflict. The fact that Dr. Crossley's conclusions differed from those of Dr. Springer does not make them improper. Under ERISA, no special deference is afforded to the opinions of a treating physician such as Dr. Springer.[59] Moreover, while Mr. Sadler challenges the independence of Dr. Crossley's review, he does not provide any evidence or support showing an absence of autonomy.[60] To the contrary, the record indicates that Dr. Crossley conducted an independent evaluation of Mr. Sadler's claim and considered all of the information gathered as part of United of Omaha's review of the LTD claim including medical records from Mr. Sadler's treating physician, ophthalmologist, psychologist, cardiologist, and cardiac electrophysiologist.

## **CONCLUSION**

For the reasons set forth above, the Court finds that United of Omaha's determination that Mr. Sadler was not entitled to benefits beyond April 14, 2016 is reasonable and supported by substantial evidence in the administrative record.

---

[59] As the Tenth Circuit noted in *Nelson v. Aetna Life Ins. Co.*, 568 F. App'x 615, 620–21 (10th Cir. 2014), this argument sounds in the "treating physician" rule applicable in social security proceedings for which there is no similar requirement under ERISA (*citing Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003) (holding that ERISA plan administrators are not obligated to accord special deference to the opinions of treating physicians).

[60] *See Murphy v. Deloite & Touche Group Ins. Plan*, 619 F.3d 1151, 1163, ftn. 7 (10th Cir. 2010) (discussing ability to conduct discovery related to the autonomy of an independent physician's review.)

ACCORDINGLY, IT IS HEREBY ORDERED, that Plaintiff Jon Sadler's Motion for Summary Judgment is DENIED and Defendant United of Omaha Life Insurance Company's Motion for Summary Judgment is GRANTED. Judgment shall be entered in favor of United of Omaha.

Consistent therewith, the Clerk of Court is directed to enter final judgment.

DATED this 8th day of October 2018.

BY THE COURT

_____
Honorable Dustin B. Pead
United States District Court Magistrate Judge